Joseph H. SPAULDING, d.b.a. Whiteway Manufacturing Company, Plaintiff,

v.

GUARDIAN LIGHT COMPANY, Inc., Defendant.

Civ. A. No. 56 C 1694.

United States District Court
N. D. Illinois, E. D.

June 26, 1958.

Judgment Affirmed April 28, 1959.

J. Warren Kinney, Jr., Cincinnati, Ohio, Parker & Carter, Chicago, Ill., for plaintiff.

Wallace & Cannon, Chicago, Ill., for defendant.

LA BUY, District Judge.

### Findings of Fact

1. Plaintiff, Joseph H. Spaulding, is a resident of Fort Mitchell, Kentucky, and is doing business as Whiteway Manufacturing Company, in Cincinnati, Ohio;

2. Defendant, Guardian Light Company, Inc., is an Illinois corporation having a regular and established place of business in Oak Park, Illinois, within the Northern Judicial District of Illinois, Eastern Division;

3. Plaintiff is the owner of the entire right, title and interest in and to United States Letters Patent No. D-168,974, granted March 3, 1953 to the plaintiff, Joseph H. Spaulding, on "Fluorescent Lighting Fixture", on an application, Serial No. 22049, filed October 30, 1952;

4. The complaint charged infringement by the defendant of plaintiff's United States Letters Patent No. D-168,-974, and by reason of plaintiff's answer to Defendant's Interrogatory No. 5, and plaintiff's testimony in open court, the lighting fixtures manufactured and sold by the defendant which plaintiff charges to be infringed are the fluorescent lighting fixtures identified as Defendant's Series 7000, Series 7000-RS, Slimline 7000 Series, and Series 470. Defendant's 7000 Series is exemplified by DX3 and its 470 Series by DX2. Defendant's accused fluorescent lighting fixtures are also illustrated and described in defendant's 1956 catalogue (DX14, Tabs A and B (7000 Series) and Tab E (470 Series));

5. The defendant filed its answer to the complaint and with its answer filed a counterclaim requesting a declaratory judgment as to the asserted validity and alleged infringement of plaintiff's patent No. D-168,974, in suit, under Title 28 U.S.C. § 2201, and thereafter plaintiff filed his reply (answer) to defendant's counterclaim;

6. The action was tried by the Court in the period from November 22, to November 27, 1957, on the issues raised by the complaint and answer and by defendant's counterclaim and plaintiff's reply thereto, as to the asserted validity and alleged infringement of plaintiff's patent No. D-168,974, in suit;

7. Plaintiff's patent No. D-168,974 discloses a fluorescent lighting fixture in the form of a housing for fluorescent electric lighting equipment. The housing is of a plain geometric design and an unornamented design and includes a generally flat longitudinally extending center bottom panel and two side bottom panels which extend outwardly and upwardly from the center bottom panel at an angle of about 15° from the horizontal. The housing also includes walls, which are plain and geometric in design, and unornamented, as shown in Figs. 1 and 4 of the drawings of the patent, and the housing also includes a top wall which includes four triangular-shaped panels each of which has its apex at the center of the top wall of the housing. Two of the triangular-shaped panels in the top wall of the housing extend from the center downwardly and outwardly to the ends of the side walls of the housing and two of the triangular-shaped housings extend downwardly and outwardly to the ends of the end walls of the housing. This top wall design is shown in Figs. 3 and 4 of the drawings of plaintiff's patent No. D-168,794;

8. There is no description in the specification, or in the claim, of patent No. D-168,974, in suit, as to any dominant feature or features of the design shown in the patent which the patentee

considered to be dominant or more important than any other feature or features shown in the drawings of the patent;

9. The claim of patent No. D-168,974, in suit, is commensurate with the drawings, and it incorporates by reference the design shown in the drawings, and reads as follows:

"The ornamental design for a fluorescent lighting fixture, as shown."

10. The phrase "as shown", in the claim of patent No. D-168,974, in suit, is a reference to the drawings of the patent which includes two sheets of drawing and four figures, and this phrase, "as shown", incorporates the entire design shown in both sheets of drawings (Figs. 1 to 4, inclusive), into the claim, by reference;

11. The title of plaintiff's patent No. D-168,974, in suit, reads merely "Fluorescent Lighting Fixture" and there is nothing in the patent which says that it is intended for use in, or limited for use in, the illumination of gasoline filling station pump islands and adjacent areas, or that the fluorescent lighting fixture shown in the patent has to be mounted at any particular height above the ground level in use;

12. The only fluorescent lighting fixture produced by plaintiff at the trial which embodies the design shown in patent No. D-168,974, in suit, is PX 10;

13. The evidence shows that plaintiff has not manufactured or sold any fluorescent lighting fixtures embodying the design shown in patent No. D-168,974, in suit, including the top wall design shown in Figs. 3 and 4 of the drawings of the patent, since sometime in the early part of the year 1955, and at the time of the trial plaintiff was not manufacturing or selling any fluorescent lighting fixture embodying the exact design shown in patent No. D-168,974, in suit, including the top wall design shown in Figs. 3 and 4 of the drawings thereof;

14. Plaintiff's current commercial fluorescent lighting fixtures, which plaintiff has manufactured and sold since sometime in the early part of the year 1955, are exemplified by PX11 and DX1, and do not come under and are not covered by the Spaulding patent No. D-168,974, in suit, because they do not embody the top wall design shown in Figs. 3 and 4 of the drawings of patent No. D-168,974, but instead embody a top wall which has a longitudinally extending flat center portion and two downwardly extending generally rectangular-shaped top side panels which extend downwardly from the longitudinally extending top center panel to the side edges of the top wall of the housing and extend the full length of the housing. The housing in each of plaintiff's present commercial fixtures, as exemplied by PX11 and DX1, also includes end panels and a longitudinally extending center bottom panel, and two side bottom panels which extend upwardly and outwardly from the center bottom at an angle of about 15° from the horizontal;

15. Defendant's accused fluorescent lighting fixtures, as exemplified by DX3 and DX2, each embodies a housing including end panels, a longitudinally extending generally flat center bottom panel, and two outwardly and upwardly extending bottom side glass panels which extend upwardly at an angle of about 15° from the horizontal. The top wall of defendant's accused fluorescent lighting fixtures includes a longitudinally extending generally flat center top panel and two generally rectangular-shaped side panels which extend downwardly and outwardly therefrom to the side edges of the housing and extend the full length of the housing;

16. Plaintiff's commercial fluorescent lighting fixtures, as exemplified by PXII and DX1, and defendant's accused fluorescent lighting fixture, as exemplified by DX3, and DX2, are used commercially for the illumination of pump islands and adjacent areas of gasoline filling stations and in use are mounted on supporting posts which extend above the pump island areas. The average height at which such fixtures are mounted, above ground level,

is about 9 feet (R.424) but under some conditions the height may be greater and may be as much as 12 or 14 feet. The mounting of defendant's accused fixture (PX12) at a height of 14 feet, at the trial, was not in accordance with the defendant's usual practice since this fixture was made on special order for one of defendant's customers;

17. Plaintiff's magazine advertising, as exemplified by plaintiff's advertisement in National Petroleum News, issue of November 19, 1952, page 27, (PX14), and plaintiff's advertisement in the April 1956 issue of National Petroleum News, page 72 (DX9), uses the following expression in reference to plaintiff's commercial fluorescent lighting fixtures, as exemplified by PX11 and DX1:

"Patented 15° angle (Pat. No. 168,942) throws *more* light over a *wider* area";

This and similar statements used by the plaintiff in connection with the advertising and sale of its commercial fluorescent lighting fixtures, as exemplified by PX11 and DX1, are designed to create the impression with the public, and in the trade, that the plaintiff's patent No. D-168,974 covers the 15° angle arrangement of the upwardly and outwardly extending (glass) side bottom panels of these fixtures, although the Spaulding patent No. D-168,974, in suit, does not extend to or cover this feature, per se, and plaintiff admitted at the trial (R. 365-6) that he does not have a patent on the 15° angle arrangement of the glass side bottom panels of his fluorescent lighting fixtures;

It is agreed between the parties that the reference in the above quotation to Pat. No. "168,924" is in error and that the reference should have been the Pat. No. D-168,974, in suit;

18. At page 27 of National Petroleum News, issue of November 19, 1952 (PX 14) the following additional statement is made by plaintiff in reference to plaintiff's commercial fluorescent lighting fixtures offered for sale under patent No. D-168,974, in suit, as testified to by plaintiff at the trial (R.366):

"A (Reading) 'Instead of throwing all the light straight down on the island, Whiteway's unique 'Angle' Construction distributes the light over the entire work area—even eliminating the need for flashlight for under-hood service. Their brilliant, yet pleasing, light forms a display that draws motorists into your modern, inviting establishment. When you re-light for more profits, get all you pay for with Whiteway "Angle-Lume".' "

19. In his catalogue, (DX4) the plaintiff used the following expressions in reference to his commercial fluorescent lighting fixtures which he advertises for sale under patent No. D-168,974, in suit:

"In 'Angle-Lume', science and Whiteway engineers have perfected the ultimate in island lighting. 'Angle Lume', as the name implies, evenly distributes white, glareless light into every corner of your work area with minimum light loss."

"The Whiteway 'Angle Lume' Model AL makes all other island lighting systems obsolete by comparison. That's because you enjoy wide-angle side lighting  *  *  * bountiful light to flood your entire work area in soft, pleasing light, not just your pump islands!"

"You Get—Wider Angle Lighting!

"Features 15° angle underside—28" full width—to give wider distribution of light. Light is thrown out and down—not down only! You get 84 sq. inches more glass emenation surface than any other light of similar design! There is less light trapped inside—more light outside!"

20. The testimony of plaintiff's witnesses, Seaton and Coffield, and the testimony of defendant's witness, Akely, establishes that the primary purpose of the 15° angle arrangement of the (glass) side bottom panels shown in plaintiff's patent No. D-168,974, and in plaintiff's

commercial fluorescent lighting fixtures, as exemplified by DX11 and DX1, and in defendant's accused fluorescent lighting fixtures, as exemplified by DX3 and DX2, is to spread the light from the illuminated (glass) side bottom panels during nighttime illumination of gasoline filling station pump islands, and adjacent areas, over a wider area than would be possible if the side bottom glass panels were flat, that is, horizontal. The evidence further establishes that whatever ornamental appearance may be imparted to the design shown in the patent in suit, and to plaintiff's and defendant's commercial fluorescent lighting fixtures, by the 15° angle arrangement of the side bottom panels, is secondary and merely incidental to the primary utilitarian purpose of these upwardly and outwardly inclined (glass) bottom panels;

21. Plaintiff testified (R.352–7–8) that the four triangular-shaped panels of the top wall of the fixture shown in the patent, and as embodied in PX10, are "water drains" which are designed to shed the water from the top wall of the fixture, and hence the design of the top wall of the patent in suit is admittedly primarily functional and utilitarian and not ornamental;

22. The fluorescent lighting fixture shown in the Ulrick patent No. D-168,-812 (PX6) was in the prior art prior to the fixture shown in the Spaulding patent No. D-168,974, in suit, and fixtures embodying the design of the Ulrick patent No. D-168,812 were sold by the plaintiff and embodied illuminated bottom glass side bottom panels which extended upwardly and outwardly from the longitudinally extending center bottom panel at an angle estimated by the plaintiff and his witnesses to have been either 15° or somewhere from 22° to 25° relative to the horizontal;

23. Prior to the fixture shown in the Spaulding patent No. D-168,974, in suit, and as early as the fall of 1951, (R.409–410) the defendant had manufactured and sold fluorescent lighting fixtures for gasoline filling station pump island illumination and these fixtures are exemplified by DX10 (6000 Series), which is also shown in defendant's catalogue (DX14, Tab D), and by defendant's 570 Series, which is shown in defendant's catalogue (DX14, Tab F). These earlier fixtures of the defendant had the same general design and configuration as are embodied in defendant's accused lighting fixtures, as exemplified by DX2 and DX3, except that the illuminated glass side bottom panels were either flat, that is, horizontal, or extended upwardly from the longitudinally center bottom panel at an angle of from 2° to 2½°, as in the case of the defendant's 6000 Series (DX10);

24. Both plaintiff's commercial fluorescent lighting fixtures, as exemplified by PX11 and DX1, and defendant's accused fluorescent lighting fixtures, as exemplified by PX3 and DX2, are expensive equipment and are sold as complete units, with the electrical equipment therein, at a general price range of from $100 to $150. These fixtures, as sold, include the housing and the fluorescent lamps and electrical equipment contained in the housing for illuminating the fluorescent lamps and the glass side bottom panels of the fixture;

25. When a jobber solicits an order for one of the plaintiff's commercial fluorescent lighting fixtures, or for one of defendant's accused fluorescent lighting fixtures, the order is usually placed by catalogue number and the fluorescent lighting fixture is shipped from the manufacturer to the purchaser in a carton which clearly bears the name of the manufacturer, and plaintiff's commercial lighting fixtures and defendant's accused fluorescent lighting fixtures bear the respective names or trademarks of the parties, namely, "Whiteway" and "Guardian", respectively. Thereafter the fixture is taken to the gasoline filling station, or like place where it is to be used, and is erected on one or more supporting poles and its electrical equipment connected to a source of power for illuminating the fluorescent lamps in the fixture

and the upwardly and outwardly extending glass side bottom panels of the fixture;

26. While the top wall of the plaintiff's commercial fluorescent lighting fixtures, as exemplified by PX11 and DX1, and the top wall of the defendant's accused fluorescent lighting fixtures, as exemplified by PX3 and DX2, are elevated a considerable distance above ground level, in use, when these fixtures are purchased they are purchased in knockdown or unassembled form and the purchaser has ample opportunity to examine the entire fixture including its top wall and top wall panel design.

27. There was no evidence that anyone has ever purchased one of defendant's accused fluorescent lighting fixtures thinking it was one of plaintiff's fixtures, and the witnesses who testified for plaintiff were his own sales representative (Switzer) and representatives of oil equipment and supply companies (Oswald, Huber, Seaton and Coffield) who deal in and purchase plaintiff's commercial fluorescent lighting fixtures from the plaintiff and, in turn, sell them to the ultimate consumer, usually a petroleum company, for installation in gasoline filling stations. None of the purchasers of these fixtures for petroleum companies, or other purchasers was called to testify at the trial;

28. At the trial the plaintiff introduced the testimony of witnesses designed to show commercial acceptance and success of plaintiff's present commercial fluorescent lighting fixtures, as exemplified by PX11 and DX1, but plaintiff offered no evidence to show that any part of whatever commercial acceptance or success his current commercial fluorescent lighting fixtures, as exemplified by PX11 and DX1, have had has been due to the design disclosed in his patent No. D-168,974, in suit, as distinguished from the utility of the plaintiff's commercial fluorescent lighting fixtures for the nighttime illumination of gasoline filling stations, or to plaintiff's advertising of his commercial fluorescent lighting fixtures, the sales efforts of his sales representatives, and other factors, which have contributed to whatever commercial success and acceptance plaintiff's commercial fluorescent lighting fixtures have had;

29. Plaintiff's evidence as to commercial acceptance and success of his current commercial fluorescent lighting fixtures, as exemplified by PX11 and DX1, does not establish that the only specimen of plaintiff's commercial fluorescent lighting fixtures which embodies the design shown in his patent No. D-168,974, in suit, namely, PX10, was ever commercially successful, and plaintiff's evidence shows that the plaintiff abandoned the manufacture and sale of this fixture (PX 10), at least as early as the early part of the year 1955, for reasons of economy in manufacture (R.388–9).

30. The plaintiff's attorney first wrote the defendant on March 18, 1954 (DX7) requesting the defendant to take a license out under the Spaulding patent No. D-168,974, in suit, and also under the Ulrick patent No. D-168,812, but without making a direct charge of infringement against defendant at the time as to either patent;

31. Defendant's attorneys replied to the letter of March 18, 1954 (DX7) from plaintiff's attorney to defendant, denying infringement of both patents Nos. D-168,974 and D-168,812 and asserting that patent No. D-168,974, in suit, was in their opinion invalid;

32. Plaintiff's attorney wrote defendant's attorneys on April 28, 1954 (DX12) requesting a list of the patents relied upon by defendant's attorneys in support of their opinion that patent No. D-168,974 was invalid;

33. After a lapse of nearly two years and four months, plaintiff's attorney again wrote defendant's attorneys, on April 20, 1956 (DX8) making a direct charge of infringement of the Spaulding patent No. D-168,974, in suit, but not charging infringement of the Ulrick patent No. D-168,812, and defendant's at-

torneys replied thereto on May 5, 1956 (DX13) asserting that in their opinion the defendant was not infringing Spaulding patent No. D-168,974 and that the Spaulding patent No. D-168,974 was, in their opinion, invalid;

34. The evidence shows that at the time the plaintiff's attorney first wrote defendant on March 18, 1954 (DX7) requesting defendant to take a license out under the Spaulding patent No. D-168,-974, in suit, and also under the Ulrick patent No. D-168,812, plaintiff did not own the Ulrick patent No. D-168,812, and the evidence further shows that plaintiff has never owned the Ulrick patent No. D-168,812 and that the most that plaintiff has ever owned, as to this patent, is a non-exclusive license from the owner of the patent to make and sell the design which forms the subject matter of this patent without payment of royalties;

35. The evidence further shows that while the plaintiff and his witnesses testified at the trial that the fluorescent lighting fixture shown in the Ulrick patent No. D-168,812 was not commercially successful in the trade, and that it was subsequently abandoned in favor of the plaintiff's commercial fluorescent lighting fixtures, as exemplified by PX10, PX 11 and DX1, the plaintiff, through his attorney, in the letter of March 18, 1954 (DX7) took the position that the defendant's accused fluorescent lighting fixtures (DX3 and DX2) came under the Ulrick patent No. D-168,812, and also under the Spaulding patent No. D-168,-974, in suit, as evidenced by the request that defendant should take out a license under both the Spaulding patent No. D-168,974, in suit, and the Ulrick patent No. D-168,812;

36. The evidence shows that defendant's witnesses and chief engineer, William S. Akely, independently conceived and developed defendant's accused fluorescent lighting fixtures, as exemplified by DX3, and DX2, without ever having seen a specimen of defendant's commercial lighting fixture and without ever

having seen plaintiff's patent No. D-168, 974, in suit, (R.437), and there is no evidence to show that he had ever been told about plaintiff's commercial lighting fixtures by anyone else at the time he conceived and developed defendant's accused fixtures;

37. In addition to the prior art as represented by the fixture which forms the subject matter of the Ulrick patent No. D-168,812 (PX6) the defendant relies upon the following prior art patents:

Scribner, D-122,236 (DX18, Tab 3)
Masterson, D-136,453 (DX18, Tab 7)
Guth, No. D-148,695 (DX18, Tab 8)
Shannon, No. 2,335,545 (DX18, Tab 13)
Campen, No. 2,335,736 (DX18, Tab 14)
Winkler, No. 2,365,614 (DX18, Tab 17)
Guth, No. 2,401,635 (DX18, Tab 18)
Guth, No. 2,488,012 (DX18, Tab 20)
Neuman, No. 2,530,582 (DX18, Tab 21)

38. The prior art patents relied upon by the defendant, and which are referred to in Findings of Fact No. 37, above, show elongated fluorescent lighting fixtures embodying a housing including a top wall, end panels, and a bottom wall having glass side bottom panels which extend upwardly and outwardly from the center of the bottom wall at various acute angles relative to the horizontal, and while these prior art fluorescent lighting fixtures are not specifically disclosed as being intended for use in gasoline filling station pump island illumination this does not detract from their significance as prior art since there is nothing in the Spaulding patent No. D-168,974, in suit, which specifies the use to which the fixture disclosed in that patent is to be put or which limits the use of the fluorescent lighting fixture therein shown to gasoline filling station pump island illumination;

39. Of the nine prior art patents relied upon by the defendant, and which are referred to in Findings of Fact No. 37, above, seven of them were not cited by the Examiner against the application, Serial No. 22,049 which matured into the Spaulding patent No. D-168,974, in suit.

**686**

### Conclusions of Law

1. This Court has jurisdiction of the parties to, and of the subject matter of, this action as set forth in the complaint and in defendant's counterclaim;

2. The Spaulding design Patent No. D-168,974 is invalid and void because of lack of design patentable novelty, originality and design invention;

3. The Spaulding patent No. D-168,-974 is invalid and void because the design shown in the patent is functional and utilitarian and not ornamental;

4. The Spaulding patent No. D-168,-974 is invalid and void because the design of the fluorescent lighting fixture shown therein represents merely the expected skill of designers and mechanics working in the art of fluorescent lighting fixtures, and did not represent or require design invention;

5. The Spaulding design patent No. D-168,974 is invalid and void because lacking patentable design, patentable novelty, originality and design invention over the prior art relied upon by the defendant including the prior art Ulrick fixture as shown in the Ulrick patent No. D-168,812 (PX6), and the following prior art patents relied upon by the defendant, namely: Scribner No. D-122,236 (DX18, Tab 3), Masterson No. D-136,453 (DX18, Tab 7), Guth No. D-148,695 (DX18, Tab 8), Shannon No. 2,335,545 (DX18, Tab 13), Campen No. 2,335,736 (DX18, Tab 14), Winkler No. 2,365,614 (DX18, Tab 17), Guth No. 2,401,635 (DX18, Tab 18), Guth No. 2,488,012 (DX18, Tab 20), and Neuman No. 2,-530,582 (DX18, Tab 21);

6. If the plaintiff's design patent No. D-168,974 was valid, the defendant's accused fluorescent lighting fixtures infringe said patent for the reason that the composite overall appearance thereof is substantially similar to the patented device and the difference between them are insufficient to change the effect upon the eye of the ordinary purchaser thereof.